IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 10, 2010

## STATE OF TENNESSEE v. TRESTAN LEMARK YARBROUGH

**Direct Appeal from the Circuit Court for Humphreys County**
**Nos. 11764, 11847, 11848     Larry Wallace, Judge**

**No. M2010-01259-CCA-R3-CD - Filed January 25, 2011**

The defendant, Trestan Lemark Yarbrough, appeals the revocation of his probation and reinstatement of his original sentence for his convictions for facilitation of aggravated assault and two counts of aggravated assault, arguing that the trial court abused its discretion by imposing a sentence that was more severe than necessary to achieve the purposes set forth in the sentencing guidelines. Following our review, we affirm the trial court's order revoking the defendant's probation and reinstating his original sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

William B. "Jake" Lockert, III, District Public Defender; and Haylee Bradley-Maples, Assistant Public Defender, for the appellant, Trestan Lemark Yarbrough.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Lisa C. Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In December 2009, the defendant pled guilty to one count of facilitation of aggravated assault and two counts of aggravated assault in exchange for an effective sentence of ten years in the Department of Correction, suspended to supervised probation. Among the terms of his probation were that he obey all laws, inform his probation officer of any change of address, and "not engage in any assaultive, abusive, threatening or intimidating behavior."

On March 10, 2010, the defendant's probation officer filed a probation violation report alleging that the defendant had violated the above three conditions of his probation by violating an order of protection, assaulting and threatening his girlfriend, and changing his residence without notification or permission.

At the revocation hearing, Tennessee Board of Probation and Parole Officer John McGranahan testified that his supervision of the defendant began on December 14, 2009, following the defendant's aggravated assault convictions. The victim in one of those cases was the defendant's on-again, off-again girlfriend, Bobbie Glenn, and it was Glenn who, on March 9, 2010, took out an order of protection against the defendant in which she alleged that he had choked and assaulted her. Later that same day, Glenn telephoned the Humphreys County Sheriff's Department to report that the defendant had called threatening to kill her and burn down her house. Furthermore, when arrested, the defendant told the officers that he lived with Glenn, despite having reported monthly to McGranahan that his residence was with his grandmother.

McGranahan identified a certified copy of the judgment in the order of protection case, which showed that the defendant was found guilty and sentenced to ten days in jail "with recommendation that his 10 yr Probation not be revoked." He testified that during his brief period of supervision, the defendant, who was unemployed and had no identification, reported each month as directed, took steps to obtain a birth certificate and other identification, and passed a February 12, 2010 drug screen. He said he had never supervised the defendant on any other case, but his records indicated the defendant had been "violated several times" in a previous case in which he had been sentenced to community corrections.

The defendant testified that he was still living with his grandmother on March 9, 2010, but he had been spending his days with Glenn, with whom he had two children. He said that Glenn told the judge during an April 1, 2010 hearing in the order of protection case that she had made up her allegations because she was jealous of the defendant's attentions to another woman. However, after the judge threatened to charge her with perjury, she returned to court and changed her story. On cross-examination, he denied that Glenn's April 1, 2010 recantation had resulted from threats made against her by himself or his family members. He acknowledged, however, that he knew that Glenn had gone to the district attorney's office before court that morning to complain about the alleged threats and that an investigation into the matter had been initiated.

Upon examination by the trial court, the defendant testified that he had a biological daughter with Glenn, had been in the process of adopting one of her other children, and had two biological sons with two other women. He said he had not been ordered to pay child support for any of the children because he had been in the penitentiary until June 11, 2008.

When asked why he had continued his relationship with Glenn, he stated that he had told her that he was "done" with her at the time he entered his aggravated assault guilty pleas but then decided to give her "another chance" after she tearfully begged his forgiveness and promised that "she would do better."

Following the defendant's testimony, the trial court found by a preponderance of the evidence that the defendant had violated the three conditions of probation alleged in the probation violation report and, consequently, revoked his probation. The court then heard evidence relevant to sentencing, which included testimony from Lance Parker, a community corrections case officer who had previously supervised the defendant, who said that the defendant had been revoked from community corrections for "various rule reasons." In addition, John McGranahan recounted the defendant's prior criminal history, which included four felony convictions, including 1999 convictions for arson and aggravated burglary in which the defendant's concurrent six-year sentences had been suspended to community corrections. McGranahan also quoted as follows from the summary report made when the defendant was terminated from the community corrections program:

> He failed numerous drug tests for cocaine and had new charges in Humphreys County for disorderly contact and public intoxication. He has a history of bond jumping. He has a history of drug abuse and has not completed any rehab he was sent to.

McGranahan further testified that the defendant had been assigned to maximum security while in prison.

Roxanne Yarbrough, the defendant's mother, testified in the defendant's behalf that she had witnessed a change in the defendant during the time he had been on probation, observing that he spent most of his time with his children, helped his disabled grandmother, and stayed home more often than he had in the past. She described Glenn as a jealous woman and said she had told her that she and the defendant needed to learn to either get along or to stay away from each other. Finally, she testified that Glenn had visited the defendant in jail within the past two weeks.

At the conclusion of the hearing, the trial court ordered that the defendant serve his original sentence in confinement based on the violent circumstances surrounding his original offenses and his violation of probation, his unsuccessful history on community corrections, and his demeanor before the court. The trial court's ruling states in part:

> And also on cross examination by the State, I did, based on his demeanor, . . . get a sense that . . . if he could get his hands on Ms. Glenn

again for what she's done to him, putting him back here in jail again, that he would.

And the Court just doesn't feel like [the defendant] is looking in the mirror and accepting responsibility for his actions and choices that we make and that it's always someone else's fault. He's blamed Ms. Glenn for all these problems. He's even blamed [the judge who found him in violation of the order of protection] for putting . . . Ms. Glenn's back against the wall to . . . force her to testify the way she did. In effect, suborning perjury, I guess you could say in a way, which I don't find very persuasive.

So, based on all these factors, the Court believes that [the defendant's] probation should be fully revoked and he's to serve the balance of his sentence.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court abused its discretion by imposing too harsh a sentence upon the revocation of his probation. He asserts that there was "a misunderstanding with regard" to his alleged change of residence without permission and argues that he has been sufficiently punished for his violation of the order of protection by the ten-day jail sentence he received. He also points out that he passed his drug screen and has made progress toward obtaining his identification and seeking employment. He, therefore, contends that he should have been resentenced to community corrections following one year's service of his sentence in the county jail. The State responds by arguing that the trial court acted within its discretion in reinstating the defendant's original ten-year sentence in the Department of Correction. We agree with the State.

The trial court is expressly authorized by statute to reinstate a defendant's original sentence upon a finding that the defendant has violated the terms of his or her probation. See Tenn. Code Ann. §§ 40-35-310, -311 (2010); State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) order that the original entire probationary period begin anew; or (3) extend the probationary period by up to two years. Hunter, 1 S.W.3d at 644; Tenn. Code Ann. §§ 40-35-308, -310, -311 (2010).

The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must

-4-

demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).  The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment.  Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).  We, therefore, review this issue for an abuse of discretion.

We find no abuse of discretion in the trial court's revocation of the defendant's probation and reinstatement of his original sentence in the Department of Correction. Substantial evidence, including a certified copy of the defendant's judgment for violating the order of protection, was presented to show that the defendant had violated the terms of his probation. The State also presented substantial evidence to show that the defendant had been unsuccessful with a past community corrections sentence. Moreover, although the defendant essentially concedes on appeal that he violated the terms of his probation by not obeying the order of protection, he failed to show any remorse for his actions at the hearing and instead accused the victim of fabricating the allegations against him. Under these circumstances, the trial court acted within its discretion in reinstating the defendant's original sentence.

## **CONCLUSION**

We conclude that the trial court acted within its discretion in revoking the defendant's probation and ordering that he serve his original sentence in incarceration. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE